JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

PFIZER, INC.

**DEFENDANTS**

AIMEE DE BLASIS AMANN

(b) County of Residence of First Listed Plaintiff   Out of State
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bucks County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Jackson Lewis, P.C.
Three Parkway, 1601 Cherry Street, Suite 1350, Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
02/28/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 07/16)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| PFIZER, INC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Plaintiff(s)_ | ) | Civil Action No. |
| v. | ) | |
| AIMEE DE BLASIS AMANN | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Aimee De Blasis Amann, 19 Highview Lane, Yardley, Pennsylvania 19067.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

John M. Nolan, Esquire
JACKSON LEWIS, P.C.
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date:  _02/27/2017_

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                       *Server's signature*

                                       _____
                                       *Printed name and title*


                                       _____
                                       *Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _235 East 42nd Street, New York, New York 10017_

Address of Defendant: _19 Highview Lane, Yardley, Pennsylvania 19067_

Place of Accident, Incident or Transaction: _Pfizer, Inc., 500 Arcola Road, Collegeville, Pennsylvania 19426_
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
   (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐ No☒

Does this case involve multidistrict litigation possibilities?   Yes☐ No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐ No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
   (Please specify) _Defend Trade Secrets Act_

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _John M. Nolan_, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: _02/28/2017_   _John M. Nolan_   _94337_
                        Attorney-at-Law                Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _02/28/2017_                             _94337_
                        Attorney-at-Law                Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PFIZER, INC,

         Plaintiff,

v.

AIMEE DE BLASIS AMANN,

         Defendant.

Civil Action No.

### DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, the undersigned counsel for Plaintiff Pfizer, Inc. hereby states that Pfizer, Inc. has no parent corporation or any publicly held corporation owning 10 percent or more of its stock.

Respectfully submitted,

By:    */s/ John M. Nolan*
      John M. Nolan
      **JACKSON LEWIS P.C.**
      1601 Cherry Street, Suite 1350
      Philadelphia, PA 19102
      (267) 319-7802

      ***ATTORNEYS FOR PLAINTIFF***

Dated: February 21, 2017

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 235 East 42nd Street, New York, New York 10017

Address of Defendant: 19 Highview Lane, Yardley, Pennsylvania 19067

Place of Accident, Incident or Transaction: Pfizer, Inc., 500 Arcola Road, Collegeville, Pennsylvania 19426
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐   No☒

Does this case involve multidistrict litigation possibilities?     Yes☐   No☒
*RELATED CASE, IF ANY*:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) Defend Trade Secrets Act

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, John M. Nolan , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 02/28/2017          John M. Nolan                 94337
                          Attorney-at-Law              Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/28/2017                                         94337
                          Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PFIZER, INC,

        Plaintiff,

v.

AIMEE DE BLASIS AMANN,

        Defendant.

Civil Action No.

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, the undersigned counsel for Plaintiff Pfizer, Inc. hereby states that Pfizer, Inc. has no parent corporation or any publicly held corporation owning 10 percent or more of its stock.

Respectfully submitted,

By:    */s/ John M. Nolan*
       John M. Nolan
       **JACKSON LEWIS P.C.**
       1601 Cherry Street, Suite 1350
       Philadelphia, PA 19102
       (267) 319-7802

       ***ATTORNEYS FOR PLAINTIFF***

Dated: February 27, 2017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| PFIZER, INC. | : | CIVIL ACTION |
| v. | : | |
| AIMEE DE BLASIS AMANN | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)  (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )

| | | |
|---|---|---|
| 02/27/2017 | | Plaintiff, PFIZER, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267-319-7840 | 215-399-2249 | NolanJ@JacksonLewis.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)  The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)  In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)  The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)  Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)  Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PFIZER, INC,

        Plaintiff,

v.

AIMEE DE BLASIS AMANN,

        Defendant.

Civil Action No.

## VERIFIED COMPLAINT SEEKING INJUNCTIVE RELIEF

### NATURE OF ACTION

1.    This action is brought by Plaintiff Pfizer, Inc. ("Pfizer") to enjoin its former employee, Defendant Aimee De Blasis Amann ("Amann"), from unlawfully disclosing or otherwise using Pfizer's highly confidential and extremely sensitive information that Amann misappropriated, and to require Amann to preserve such information.

2.    Amann was employed by Pfizer as a Global Marketing Director at the time of her voluntary resignation, effective January 13, 2017. At the time of her resignation, Amann worked in Collegeville, Pennsylvania.

3.    In the days and weeks leading up to her voluntary resignation from employment, Amann unlawfully misappropriated Pfizer's proprietary, confidential and trade secret information concerning, among many other aspects of Pfizer's business, Pfizer's strategic planning, short and long term operating plans, and specific product launch roadmaps. The disclosure of Pfizer's confidential information by Amann violates a written agreement between Amann and Pfizer, common law, and statutory law. Such disclosure causes severe and irreparable harm to Pfizer.

4.      After submitting her voluntary resignation and before her employment ended, Amann refused to inform Pfizer where she planned to work after her employment with Pfizer ended or if she was planning to work for one of Pfizer's competitors. After Amann's employment ended, Pfizer discovered that Amann had unlawfully misappropriated Pfizer's proprietary and confidential information. In particular, Amann had used Pfizer's email system to forward Pfizer's proprietary, confidential, and trade secret information to her unsecure personal email account. Indeed, Pfizer has discovered 42 emails, many of which included attachments, that were sent by Amann to her personal email account in the days and weeks leading to her voluntary resignation. There was no lawful business purpose for Amann to forward this information to her personal email account. Upon information and belief, Amann remains in possession of such emails, through her personal electronic devices and her personal, cloud-based email account.

5.      In addition, upon information and belief, Amann secretly copied approximately 600 Pfizer files (some of which files include folders that in turn contain approximately 6,000 files and which may be within her possession) to an unencrypted removable USB external hard drive device during the last weeks of her employment, including the days before she resigned. Those secretly copied and unencrypted files contain numerous confidential, proprietary and sensitive files concerning, for example, Pfizer's strategic plans, its business forecasts and sensitive product data. If such information were to be disclosed to Pfizer's competitors in the highly competitive pharmaceutical industry, such disclosure would be severely detrimental to Pfizer's proprietary business strategy and competitive advantage. There was no lawful business purpose for Amann to copy these confidential and sensitive files to a removable external hard drive.

6.      Upon information and belief, Amann remains in possession of these misappropriated files through her personal electronic devices, including the removable USB

external hard drive device described in the previous paragraph. Further, Amann's refusal to inform Pfizer whether she planned to work for a competitor after her employment with Pfizer ended, leads Pfizer to reasonably believe that she intends to provide Pfizer's confidential information to a competitor.

7.     This action is also brought for the purpose of preserving evidence to be used in connection with an arbitration that Pfizer intends to pursue as provided for in an arbitration agreement between Amann and Pfizer. In particular, Pfizer intends to arbitrate claims for Amann's breach of contract and other violations of law, including Amann's violation of the federal Defend Trade Secrets Act (DTSA) and the Pennsylvania Uniform Trade Secrets Act (PUTSA). Pfizer intends to seek its monetary damages resulting from Amann's unlawful conduct in that arbitration.

8.     Based on the foregoing and for the reasons set forth in more detail below, Pfizer requests that this Court (1) enjoin Amann from disclosing Pfizer's proprietary/confidential information and trade secrets to any third party either verbally or through the disclosure of documents, otherwise using such information in any manner, including but not limited to opening, downloading, or copying such information, or attaching any device containing such information to another device; (2) order Amann to immediately provide any personal electronic devices under her control (including any computer, laptop, tablet, storage device, mobile telephone etc.) to an independent computer forensic specialist designated by Pfizer, under the supervision and authority of the United States Marshal's Office, for forensic imaging; and (3) enjoin Amann from accessing, transferring or destroying any of Pfizer's proprietary/confidential information and trade secrets unless ordered to do so by the Court or an arbitrator, or agreed to by the parties, in part, so that such information can be properly forensically imaged. Without such relief, Pfizer will suffer continued irreparable damage to its operations and reputation.

9.      Following the resolution of this action in which Pfizer seeks the requested injunctive relief only, Pfizer intends to file a separate arbitration action pursuant to which it will pursue any applicable monetary damages in connection with Amann's unlawful conduct.

PARTIES

10.     Pfizer is a Delaware corporation with a principle place of business located at 235 East 42nd Street, New York, New York 10017.

11.     Amann is a natural person who, upon information and belief, resides at 19 Highview Lane, Yardley, Pennsylvania 19067.

JURISDICTION AND VENUE

12.     This is an action in law and equity pursuant to which Pfizer seeks a temporary restraining order and preliminary injunctive relief based on Amann's breach of contract and other violations of law, including Amann's violation of the federal DTSA and the PUTSA.  Pursuant to a contractual agreement, Pfizer will seek additional legal relief via arbitration.

13.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) over Pfizer's federal claim under the DTSA, 18 U.S.C. § 1831 *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Pfizer's state law claims because those state law claims arise out of the same operative facts as the federal claim.

14.     This Court also has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a) because the parties are diverse.  Pfizer is a Delaware corporation with its principle place of business located in New York, Amann is a Pennsylvania resident, and the amount in controversy greatly exceeds $75,000.00 exclusive of interest and costs.

15.     This Court has personal jurisdiction over Amann because she provided services to Pfizer in Pennsylvania, and in connection with her conduct in Pennsylvania, has violated the

DTSA, PUTSA, breached certain contractual obligations owing to Pfizer, and has caused tortious injury to Pfizer, in Pennsylvania.

16.    Venue is proper in this district under 28 U.S.C. § 1391(b) because Amann provided services to Pfizer in this district, and the unlawful acts alleged occurred in this district.

FACTS

**A.    Pfizer.**

17.    Pfizer is a global research-based biopharmaceutical and consumer healthcare company engaged in the discovery, development, manufacture and sale of prescription medications and over-the-counter healthcare products. Pfizer spends hundreds of millions of dollars strategically planning and commercializing its assets. Pfizer competes in the highly competitive pharmaceutical industry. Pfizer's short and long term planning regarding its product development, research, government approval processes, and commercial sales are highly valuable and proprietary. As a result, Pfizer makes all practical efforts to protect this critically sensitive information from being disclosed to third parties, including in particular its competitors.

18.    Pfizer takes extensive precautions to protect the confidentiality of its information. To this end, Pfizer requires employees who will have access to Pfizer's network computers and/or proprietary, confidential and trade secret information to undergo criminal background checks. Pfizer also mandates that its employees enter into employment agreements that prohibit the disclosure of Pfizer's proprietary, confidential and trade secret information, and also requires that employees return all of Pfizer's property after their employment with Pfizer ends. In addition, Pfizer employees undergo training regarding the protection of Pfizer's confidential information, including in particular on the prohibition of using personal email to conduct company business.

**B.    Amann's Employment With Pfizer**

19.    On or about May 8, 2006, Amann began working at Pfizer in a marketing capacity.

20.     Amann remained in a marketing role throughout her employment with Pfizer. At the time her employment ended, she was a Global Marketing Director and worked in Collegeville, Pennsylvania. In particular, Amann was responsible for globally marketing Xeljanz, which is a medication that can be used to treat Rheumatoid Arthritis (RA). To that end, Amann worked with sensitive data regarding the indications and treatment of RA patients. She also led Pfizer's strategic planning in connection with the marketing of Xeljanz, which included preparing communication plans and tactical planning documents for the marketing of Xeljanz. In her leadership role, she also had access to confidential information relating to budgets, earnings, and market research, as well as confidential and sensitive information related to other Pfizer products. In sum, Amann had access to extremely sensitive proprietary, confidential and trade secret information of Pfizer, the disclosure of which to third parties would result in substantial and irreparable injury to Pfizer.

21.     Amann voluntarily resigned from her employment on January 3, 2016. On the morning of that date, she sent an email to Pfizer informing it of her resignation, which she indicated would be effective on January 13, 2016.

**C.     Amann's Agreement**

22.     On May 8, 2006, Amann and Pfizer entered into the "Employment Agreement" ("Agreement"), which set forth certain of the terms of Amann's employment with Pfizer. A copy of the Agreement is attached hereto as Exhibit A.

23.     The Agreement, which is governed by New York law, requires Amann to maintain the confidentiality of Pfizer's information:

> Paragraph 1. During the course of my employment, I will acquire certain secret or confidential information, not previously known to me, and not known or used generally and I agree that, during my employment with the Company and thereafter, I will not, without the Company's written permission, disclose or use any such information (other than in the course of

6

my employment with the Company).

24.     The Agreement also requires Amann to return all of Pfizer's confidential information and other property at the end of her employment.  In particular paragraph 5 states in relevant part: "Upon my termination from the Company for any reason, I agree to return within 48 hours all Company materials within my possession, whether confidential or proprietary or that in any way relates to the business of the Company or any of its subsidiaries or affiliates."

25.     Further, the Agreement expressly provides for Pfizer's right to injunctive relief in the event of a breach of the Agreement by Amann.  Specifically, the Agreement states as follows:

> Paragraph 7:  I agree that any breach by me of this Agreement would cause irreparable harm to the Company and that in the event of such breach the Company shall have, in addition to all other remedies at law, the right to an injunction, specific performance and other equitable relief to prevent violations of my obligations hereunder.

**D.    Pfizer Discovers Amann's Wholesale Misappropriation Of Pfizer's Confidential Information**

26.     After Amann's employment ended, Pfizer discovered that, unbeknownst to it, in the days leading up to her resignation Amann had forwarded numerous emails and other documents from her Pfizer email account to her personal email account.  Amann's forwarding of confidential and proprietary information to her personal email account violated Pfizer's "Acceptable Use of Information Systems" policy ("Acceptable Use Policy"), was contrary to training Pfizer had provided to Amann on this very issue and violated her obligation in the Employment Agreement to safeguard and protect Pfizer's information.   In particular, the Acceptable Use Policy states that "Pfizer proprietary information may not be transmitted via the Internet without protection from disclosure or modification by Pfizer-authorized security technology ...." Further, there is no lawful business purpose for Amann to maintain these emails on her unsecured personal email account outside of Pfizer's secured firewalls, particularly given

the fact she had already decided she was leaving the Company.   And, while outside of the office, Amann was able to access her Pfizer email and certain shared drives remotely via a Pfizer-authorized security technology, negating any reason to expose Pfizer information to an unsecure environment.

27.    Because of the sheer volume of information taken by Amann, Pfizer has not yet completed a full review of the emails and documents that Amann forwarded to her personal email account.  However, based on a diligent review to date, Pfizer has discovered that Amann forwarded at least 42 emails, the majority of which contain attachments as well, to her personal email account in the days leading up to her resignation, some of which contain Pfizer's most sensitive information concerning its product launches and strategic planning.  Upon information and belief, Amann had not previously forwarded email to a personal email account prior to the time period leading to her resignation from employment.

28.    In addition to discovering that Amann had emailed Pfizer's confidential information to her personal email account, Pfizer also discovered that on January 2, 2017, at 6:00 P.M., less than 24 hours before she suddenly submitted her notice of resignation, Amann connected an unencrypted removable USB electronic storage device to her Pfizer-issued laptop computer and copied 600 of Pfizer's confidential, highly sensitive and proprietary files, (of which may contain up to 6,000 files).  Amann has not returned that removable USB device to Pfizer, and, upon information and belief, is still in possession of the removable USB device.

29.    Illustrative examples of the information and documents misappropriated by Amann include the following:

    a.  A launch sequencing document for a particular pharmaceutical product, which provides detailed information regarding Pfizer's planned launch of the product that Pfizer spends years and hundreds of millions of dollars strategically planning and commercializing;

b. A communication plan document, which describes research results for a marketed product and planned communications for validation of those results in various countries and markets;

c. Earnings reports for Pfizer, which include confidential information concerning Pfizer's investments in products and processes, the effectiveness of those investments, and prospective investments going forward;

d. Tactical planning documents, which reflect strategic short and long term plans on a global and regional level, including strategies for product rollouts, spending, business forecasts, and potential courses of action in light of developing events; and;

e. Documents containing market research information, including identification of trends and paradigms, prospective areas of focus, and market research data purchased from third party providers for, at a minimum, hundreds of thousands of dollars.

30.     The information and documents misappropriated by Amann provide a detailed roadmap to Pfizer's strategic goals and how Pfizer specifically expects to implement those goals in both the near term (i.e., the next 12 months) and the long term (i.e., the next 3-5 years).  For example, the misappropriated information includes information regarding steps being taken by Pfizer in order to gain government approval of its products and formulas, the sequencing of different geographic approvals being sought by Pfizer with respect to certain products and the different formulas of those products, the alternate approaches Pfizer is considering as it moves forward in its product launches depending upon developing circumstances, and Pfizer's communication plan for marketing its products.  Amann has misappropriated this confidential information regarding multiple products, which are being launched in various countries and markets throughout the world.  This highly sensitive information is not only critically important because of its content, but in many instances it is particularly time-sensitive as it relates to products that Pfizer is presently in the process of launching into the marketplace, seeking government approvals, and marketing to potential providers and consumers.  If the information were to be

disclosed to its competitors at this critical juncture, such disclosure could have an even greater harmful impact on Pfizer's ability to effectively and competitively market its products, because competitors could unfairly utilize this time-sensitive information by taking advantage of Pfizer's research and strategic planning investments in order to target products and markets that Pfizer has identified and is presently in the process of developing.

      31.     If Pfizer's competitors in the highly competitive pharmaceutical industry were able to review this information, such competitors would be placed at a distinct and unfair advantage to Pfizer in the pharmaceutical marketplace.  Such advantage is not monetarily calculable, but by way of providing context, Pfizer spends hundreds of millions of dollars on its strategic planning and commercialization of products.  The disclosure of the highly sensitive information misappropriated by Amann could effectively negate the potential benefits arising from Pfizer's multi-million dollar investment in its products as well as years of hundreds of employees' dedicated work.  The misappropriated confidential information is highly valuable and, if disclosed to one of Pfizer's competitors, could be used to reduce Pfizer's market share and coopt numerous potential business opportunities from Pfizer, which would result in millions of dollars of lost revenue for Pfizer.  Further, in part because Pfizer is a public company, if the disclosure became public, then it could cause significant but indeterminate harm to Pfizer's reputation and stock value.  Pfizer would need to make significant expenditures to begin to remediate the harm caused by such a disclosure by Amann, including but not limited to dedicating resources to investor relations in connection with such a disclosure, and actively communicating with government agencies concerning any pending approvals of products that may be impacted by such a disclosure.

      32.     Amann was provided with access to this confidential information for the purpose of leading the launch and marketing of Pfizer's products globally.  In other words, Amann was not

just an employee *in* marketing – she played an integral role in developing and setting the global marketing strategy for an important Pfizer product and, as a result, had access to Pfizer's highly sensitive information, access to which is limited by Pfizer to select leaders.

33.     Pfizer puts in place policies to protect its information and also provides regular training to employees, including Amann, regarding the importance of maintaining confidentiality. Amann's conduct in forwarding Pfizer's confidential information to an unsecure personal email account violated Pfizer's policies.  Similarly, Amann's copying of Pfizer's files to an external hard drive also violated Pfizer's policies.   So long as Amann remains in possession of Pfizer's confidential files, in violation of her Agreement with Pfizer, Pfizer remains in imminent danger of suffering irreparable harm to its operations and reputation.

34.     As of the date of this filing, Amann has not returned any of the misappropriated confidential information, or the devices upon which they reside.

## COUNT ONE
### (Injunctive Relief)

35.     Pfizer re-alleges as if fully set forth herein the allegations contained in paragraphs 1 to 34 above.

36.     By virtue of the conduct described above, Amann has, among other things, violated the express terms of the Agreement, the common law, PUTSA, and DTSA, and has caused and/or will inevitably cause irreparable harm to Pfizer.

37.     As a direct and proximate result of Amann's breach of the Agreement and her other wrongful conduct, including her violation of statutory and common law, Pfizer has been injured and will continue to be injured through the harm to its operations and reputation.

38.     Pfizer's injuries cannot be fully quantified, and it has suffered and will continue to suffer irreparable harm due to Amann's actions.

11

39.     Pfizer has no adequate remedy at law, and the balance of hardships favors entry of a temporary restraining order and preliminary injunction against Amann.

40.     Pfizer has important and legitimate protectable interests in enforcing the terms of the Agreement against Amann and protecting from disclosure the information Amann misappropriated.

41.     Pursuant to the Agreement, common law, PUTSA, and DTSA, Pfizer is entitled to a temporary restraining order and preliminary injunctive relief to safeguard actual or threatened misappropriation of confidential information.

42.     Further, pursuant to Paragraph 7 of the Agreement, Pfizer is entitled to enforce the terms of the Agreement through the injunctive relief requested in this action.

43.     Amann's actions as described above have caused and, unless restrained, will continue to cause Pfizer severe, immediate, and irreparable injury for which Pfizer has no adequate remedy at law.

WHEREFORE, Pfizer respectfully requests the following relief be entered against Amann:

A.    A temporary restraining order and preliminary injunction that:

    i.    Enjoins Defendant Amann from any further unauthorized use, access, transfer, download, or disclosure (verbally and/or through the provision of paper/electronic documents) of any of Pfizer's confidential information;

    ii.    Requires Defendant Amann to immediately provide to an independent computer forensic specialist designated by Pfizer, under the supervision and authority of the United States Marshal's Office, for forensic imaging, all electronic devices, media and cloud-based storage accounts in her possession, custody and control, including but not limited to any home computer, laptop computer, tablet, removable storage devices, and mobile telephones;

    iii.    Requires Defendant Amann to cooperate with the computer forensic specialist designated by Pfizer, by providing any and all passwords and/or any other information necessary in order for forensic images to be made of Amann's electronic devices, media and cloud-based storage accounts;

    iv.    Enjoins Defendant Amann from deleting any information or documents from her electronic devices, media, or cloud-based storage accounts in her possession, custody or control until a copy of Defendant's electronic devices in her possession, custody or control is made and until agreement of the parties or further order of the Court;

    v.    Requires Defendant Amann to agree to a reasonable protocol, pursuant to which the computer forensic specialist designated by Pfizer shall delete all of Pfizer's confidential information from Defendant's electronic devices and media.

    vi.    Enjoins Defendant Amann from destroying any paper documents in her possession, custody or control that are the property of Pfizer and/or contain Pfizer's confidential information;

    vii.    Requires Defendant Amann to immediately return to Pfizer, in good condition, all property of Pfizer, including, without limitation, the originals and all copies of any materials which contain, reflect, summarize, describe, analyze or refer or relate to any items of confidential information; and

    viii.    Restrains Amann from any further violations of the Defense of Trade Secrets Act or from acting upon the fruits of her violation of the Act.

B.    Such other and further relief that this Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
    1601 Cherry Street, Suite 1350
    Philadelphia, PA 19102
    (267) 319-7802

By: _/s/ John Nolan_____
    John Nolan

ATTORNEYS FOR PLAINTIFF

Dated: February 21, 2017
    Philadelphia, Pennsylvania

14

## VERIFICATION

Benjamin Fitzsimmons, under penalty of perjury, verifies that he is the Senior Director Global Inflammation & Immunology Marketing of Pfizer, Inc., and that the facts in this Verified Complaint (except those facts based upon information and belief) are true and accurate to the best of his knowledge, or true to the best of his information and belief if compiled by others.

Sworn to before me and subscribed in my presence this 18th day of February 2017.

JEFFERY W. CLEVENGER
Notary Public, State of New York
No. 01CL6269688
Qualified in Westchester County
Commission Expires October 1, 2020

Notary Public

15

# EXHIBIT A

**PFIZER INC.**

EMPLOYMENT AGREEMENT

AGREEMENT made and entered into as of the _8_ day of _May_ , 20 _06_ by and between Pfizer Inc., a Delaware corporation, its subsidiaries and affiliates, with an office and a place of business at 235 East 42nd Street, New York, New York 10017 (hereinafter called "the Company") and _Aimee DeBasis_ residing at _721 Madison St. 4S Hoboken, NJ. 07030_

Recognizing that the success of the business of the Company, its divisions, and subsidiaries depends to a considerable extent on the protection of patents, inventions, discoveries and information held or used by the Company, and recognizing that during my employment I may contribute to or have access to such matters, I, in consideration of my employment or continued employment and the compensation and other benefits of my employment by the Company and intending to be legally bound, hereby agree as follows:

1. During the course of my employment, I will acquire certain secret or confidential information, not previously known to me, and not known or used generally and I agree that, during my employment with the Company and thereafter, I will not, without the Company's written permission, disclose or use any such information (other than in the course of my employment with the Company).

2a. I agree to disclose immediately and fully to the Company any idea, discovery, invention, improvement, software, writing or other material or design conceived, made or developed by me solely or jointly with others during the period of my employment with the Company during or after working hours, whether patentable or not that relates in any manner to the actual or anticipated business operations, work, investigations or research of the Company or its subsidiaries. I further agree that the entire right, title and interest in and to any such idea, discovery, invention, improvement, software, writing or other material or design shall belong to the Company; and that at the request of and without charge to the Company, but at the Company's expense, I will execute a written assignment of the same to the Company and will assign to the Company any application for letters patent or for trademark registration made thereon, and to any common-law or statutory copyright therein; and that I will do whatever may be necessary or desirable to enable the Company to secure any patent, trademark, copyright, or other property right therein in the United States and in any foreign country, and any division, renewal, continuation, or continuation in part thereof, or for any reissue of any patent issued thereon.

2b. In the event the Company is unable, after reasonable effort, and in any event after ten business days, to secure my signature on a written assignment to the Company of any application for letters patent or for trademark registration or to any common-law or statutory copyright or other property right therein, whether because of my physical or mental incapacity or for any other reason whatsoever, I irrevocably designate and appoint the General Counsel of the Company as my attorney-in-fact to act on my behalf to execute and file any such application and to do all other lawfully permitted acts to further the prosecution and issuance of such letters patent, copyright or trademark.

2c. I also agree to record descriptions of all work in the manner directed by the Company and agree that all such records and copies, samples and experimental materials will be the exclusive property of the Company.

3. I agree that I shall not disclose to the Company or induce the Company to use any secret or confidential information belonging to my former employers. Except as set forth below, I warrant that I am not bound by the terms of a confidentiality agreement or other agreement with a third party that would preclude or limit my right to disclose to the Company any ideas, inventions, discoveries, improvements or designs or other information that I may conceive as part of my employment with the Company. I agree to provide the Company with a copy of any and all agreements with a third party that preclude or limit my right to make disclosures.

4. This Agreement may be assigned by the Company as part of the Company's entire business, or to a subsidiary or affiliate of the Company, or transferred by operation of law. I agree that if I am transferred to a subsidiary or affiliate of the Company, or from one such subsidiary or affiliate to another, all the terms and conditions of this Agreement shall continue with the same force and effect as if said Agreement had been made with such subsidiary or affiliate in the first instance.

5. I understand that this Agreement does not create a contract of employment or any other type of obligation on the part of the Company or any other person to employ me for any period of time. I also understand that I am an employee at will and am subject to termination at any time and for any reason. I further understand and agree that termination of this Agreement shall not affect the covenants and conditions herein contained. Upon my termination from the Company for any reason, I agree to return within 48 hours all Company materials within my possession, whether confidential or proprietary or that in any way relates to the business of the Company or any of its subsidiaries or affiliates.

6. I agree that during the term of my employment, I shall not engage in any activity in competition with or against the best interests of the Company.

7. I agree that any breach by me of this Agreement would cause irreparable harm to the Company and that in the event of such breach the Company shall have, in addition to all other remedies at law, the right to an injunction, specific performance and other equitable relief to prevent violations of my obligations hereunder.

8. I agree that while employed by the Company, I will not be employed by or participate in the ownership, management or control, or otherwise be affiliated as a consultant, trustee, manager, partner, principal, officer, director, or independent contractor in any other business entity, or engage in any business which in any manner competes with the business of the Company as conducted during my employment, without the Company's prior written consent.

9. I agree that upon termination from the Company, I will not solicit or entice away from the Company any business, customer and/or personnel or otherwise interfere with any person who is an employee, representative, agent or consultant of the Company, who is engaged by the Company, whether for compensation or otherwise.

10. I agree that prior to accepting any new employment, I will inform a new employer of the existence of this Agreement and provide a copy to such new employer.

11. I agree that I will not begin employment with another employer without notifying the Company. The Company reserves the right to request separate written assurances satisfactory to the Company from me and such new employer that I will not be required to use or disclose secret or confidential Company information as part of my new employment.

12. If any provision or portion thereof contained in this Agreement is held to be unconstitutional, invalid or unenforceable, the remainder of this Agreement will be considered severable, shall not be affected, and shall remain in full force and effect.

13. The validity, enforceability, construction and interpretation of this Agreement shall be governed by the internal laws of the state of New York, without reference to conflicts-of-law principles.

_Aimee DeBlasis_     _Aimee DeBlasis_
Employee Name (Print)     (Signature)

_Linda DiFinno_     _Linda DiFinno_
Company Representative (Print)     (Signature)