# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PFIZER, INC,

       Plaintiff,

v.

AIMEE DE BLASIS AMANN,

       Defendant.

Civil Action No.

## PLAINTIFF'S EMERGENCY MOTION
## FOR EX PARTE TEMPORARY RESTRAINING ORDER

Plaintiff Pfizer, Inc. ("Pfizer"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, moves the Court for issuance of a temporary restraining order in the form attached hereto as <u>Exhibit 1</u> to protect trade secrets and confidential information of Pfizer's, obtain the return of Pfizer's information that Pfizer's former employee, Defendant Aimee De Blasis Amann ("Amann"), misappropriated and possesses, and to otherwise preserve the *status quo* pending discovery and a hearing as to the issuance of a preliminary injunction.

Relief is necessary, including on an expedited basis, due to the actions of Amann, who surreptitiously misappropriated Pfizer's confidential information and trade secrets in the days and weeks preceding her voluntary resignation, by forwarding such information to her private personal email account and copying such information to a removable USB storage device.

The basis for the relief requested by Pfizer is set forth more fully in the accompanying Memorandum of Law. A proposed form of Temporary Restraining Order is attached as <u>Exhibit 1</u>, and seeks three categories of relief:

1.     <u>Prohibition Of Defendant's Use Or Disclosure Of Pfizer's Confidential Information</u>.  In the days and weeks preceding her voluntary resignation from employment on January 3, 2017, Amann sent to her personal email account numerous email messages with attachments, many of which contained Pfizer's confidential information and trade secrets.  In addition, during that same time period leading to her voluntary resignation, Amann copied hundreds, and possibly thousands, of Pfizer's confidential documents, to a removable USB storage device.  Given this surreptitious conduct by Amann and her misappropriation of a large volume of confidential information and trade secrets, Pfizer has a serious concern that Amann will not comply with her common law and contractual obligations not to use or disclose Pfizer's confidential information absent injunctive relief.  Indeed, pursuant to a contractual agreement between Amann and Pfizer, she was supposed to return all of Pfizer's information and documents within 48 hours of the end of her employment.  Her employment ended on January 13, 2017, but she has still not returned any of the misappropriated confidential information or trade secures.  In other words, she is already in breach of her contractual obligations.  The Court should issue a temporary restraining order in the form proposed as <u>Exhibit 1</u> prohibiting Amann from using or disclosing Pfizer's confidential information.

2.     <u>Preservation Of Electronic Evidence</u>.   Amann has an obligation to preserve information that may be relevant to this litigation. In addition, the Court should issue a temporary restraining order in the form proposed as <u>Exhibit 1</u> that requires Amann to preserve electronic information, and that permits the creation of a forensic image of all electronic devices, media or cloud-based storage applications in Amann's possession, custody and control, including but not

limited to any home computer, laptop computer, tablet, removable storage devices, mobile telephones and electronic mail accounts, where Amann electronically stored, sent or received Pfizer's confidential information.

3.    <u>Return Of Property</u>. The Court should issue a temporary restraining order in the form proposed as <u>Exhibit 1</u> requiring Amann to immediately return Pfizer's confidential information, trade secrets, and property to Pfizer.

WHEREFORE, Pfizer requests that the Court grant the relief set forth in <u>Exhibit 1</u>, and such other and further relief as the Court may deem just and proper:

## <u>REQUEST FOR EMERGENCY HEARING</u>

Emergency relief is requested because there is a real danger that, absent issuance of the relief requested herein, confidential information and trade secrets are at risk of unlawful access, use, transfer, download, disclosure or destruction by Amann. Accordingly, Pfizer respectfully requests that the Court address the present Motion for Temporary Restraining Order on an emergency basis.

## CERTIFICATION OF COUNSEL PURSUANT TO RULE 65(b)(1)(B)

Counsel for Plaintiff hereby certifies that no efforts have been made to give notice to Defendant, as Plaintiff avers that such notice is not required because there is a real danger that, if given advance notice, Defendant will disclose the confidential information and trade secrets at issue and/or destroy such information and trade secrets.

Respectfully submitted,

By: /s/ *John M. Nolan*
John M. Nolan
**JACKSON LEWIS P.C.**
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
(267) 319-7802

*ATTORNEYS FOR PLAINTIFF*

Dated: February 27, 2017

4814-7852-6531, v. 2

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PFIZER, INC,

        Plaintiff,

v.

AIMEE DE BLASIS AMANN,

        Defendant.

Civil Action No.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER

Plaintiff Pfizer, Inc. ("Pfizer"), by its undersigned counsel, respectfully submits this memorandum in support of its Emergency Motion for an *Ex Parte* Temporary Restraining Order against Defendant Aimee De Blasis Amann ("Amann"). Pfizer incorporates by reference the Verified Complaint filed in this matter and the exhibit to the Verified Complaint.

## INTRODUCTION

Pfizer seeks temporary, emergency, relief pursuant to Rule 65(b) of the Federal Rules of Civil Procedure to protect it from Amann's unauthorized disclosure of Pfizer's confidential and proprietary information, the disclosure of which would cause substantial irreparable harm to Pfizer. This Motion seeks three categories of relief, each of which are consistent with relief that Amann has either *already* contractually agreed to provide Pfizer, or that she is otherwise legally required to provide. In particular, the proposed Temporary Restraining Order seeks the following categories of relief:

1.     A prohibition on Amann's use, transfer, download or disclosure of Pfizer's confidential information;

2. The return of Pfizer's property, including the information misappropriated by Amann; and

3. Preservation of electronic evidence, including evidence on personal electronic devices and cloud storage accounts in Amann's control.

Each of these categories of relief is authorized by Amann's contractual obligations, justified by Amann's conduct and/or designed to preserve the *status quo* in light of conduct by Amann that suggests that information will not be preserved absent the relief requested.

Without such relief, Pfizer will suffer continued irreparable harm to its operations and reputation, including but not limited to loss of market share and business opportunities in connection with ongoing product launches. The requested relief is necessary, including on an expedited basis, due to the surreptitious means by which Amann misappropriated Pfizer's confidential data in the days and weeks preceding her voluntary resignation from employment, and the resulting imminent threat that she will access, disclose and/or destroy the information and consequently alter the relevant metadata in the absence of the relief sought from this Court.

The primary basis for the relief requested by Pfizer is the "Employment Agreement" ("Agreement") between Pfizer and Amann, as well as the Defend Trade Secrets Act and other relevant statutory and common law claims regarding the misappropriation of confidential information. In the Agreement between Pfizer and Amann, she agreed, among other things, that she "will not, without [Pfizer's] written permission, disclose or use any such [secret or confidential] information (other than in the course of [her] employment with [Pfizer]." In the Agreement, Amann also stated "I agree to return within 48 hours all Company materials within my possession, whether confidential or proprietary or that in any way relates to the business of the Company or any of its subsidiaries or affiliates." Nonetheless, Amann unlawfully misappropriated

Pfizer's confidential information by emailing such information to a personal email account and copying such information to a removable external storage device in the days and weeks leading up to her voluntary resignation. As of the date of this filing, she has not returned any of the misappropriated confidential information or the devices upon which they reside. Further, the Agreement provides that any breach "would cause irreparable harm to [Pfizer] and that in the event of such breach [Pfizer] shall have, in addition to all other remedies at law, the right to an injunction, specific performance, and other equitable relief to prevent violations of [Amann's] obligations hereunder."

## FACTS

The facts supporting Pfizer's request for relief are set forth in the Verified Complaint, submitted in support of this Motion, and are also set forth here for the Court's convenience.

### Pfizer, Amann's Employment, And Amann's Agreement With Pfizer

Pfizer is a global research-based biopharmaceutical and consumer healthcare company engaged in the discovery, development, manufacture and sale of prescription medications and over-the-counter healthcare products. Pfizer spends hundreds of millions of dollars strategically planning and commercializing its assets. Pfizer competes in the highly competitive pharmaceutical industry. Pfizer's short and long term planning regarding its product development, research, government approval processes, and commercial sales are highly valuable and proprietary. As a result, Pfizer makes all practical efforts to protect this critically sensitive information from being disclosed to third parties, including in particular its competitors.

Pfizer takes extensive precautions to protect the confidentiality of its information. To this end, Pfizer requires employees who will have access to Pfizer's network computers and/or

proprietary, confidential and trade secret information to undergo criminal background checks. Pfizer also mandates that its employees enter into employment agreements that prohibit the disclosure of Pfizer's proprietary, confidential and trade secret information, and also requires that employees return all of Pfizer's property after their employment with Pfizer ends. In addition, Pfizer employees undergo training regarding the protection of Pfizer's confidential information, including in particular on the prohibition of using personal email to conduct company business.

On or about May 8, 2006, Amann began working at Pfizer in a marketing capacity. Amann remained in a marketing role throughout her employment with Pfizer. At the time her employment ended, she was a Global Marketing Director and worked in Collegeville, Pennsylvania. In particular, Amann was responsible for globally marketing Xeljanz, which is a medication that can be used to treat Rheumatoid Arthritis (RA). To that end, Amann worked with sensitive data regarding the indications and treatment of RA patients. She also led Pfizer's strategic planning in connection with the marketing of Xeljanz, which included preparing communication plans and tactical planning documents for the marketing of Xeljanz. In her leadership role, she also had access to confidential information relating to budgets, earnings, and market research, as well as confidential and sensitive information related to other Pfizer products. In sum, Amann had access to extremely sensitive proprietary, confidential and trade secret information of Pfizer, the disclosure of which to third parties would result in substantial and irreparable injury to Pfizer.

On May 8, 2006, Amann and Pfizer entered into the "Employment Agreement" ("Agreement"), which set forth certain of the terms of Amann's employment with Pfizer. A copy of the Agreement is attached to the Verified Complaint as Exhibit A. The Agreement, which is governed by New York law, requires Amann to maintain the confidentiality of Pfizer's

information:

> Paragraph 1. During the course of my employment, I will acquire certain secret or confidential information, not previously known to me, and not known or used generally and I agree that, during my employment with the Company and thereafter, I will not, without the Company's written permission, disclose or use any such information (other than in the course of my employment with the Company).

The Agreement also requires Amann to return all of Pfizer's confidential information and other property at the end of her employment. In particular paragraph 5 states in relevant part: "Upon my termination from the Company for any reason, I agree to return within 48 hours all Company materials within my possession, whether confidential or proprietary or that in any way relates to the business of the Company or any of its subsidiaries or affiliates."

Further, the Agreement expressly provides for Pfizer's right to injunctive relief in the event of a breach of the Agreement by Amann. Specifically, the Agreement states as follows:

> Paragraph 7: I agree that any breach by me of this Agreement would cause irreparable harm to the Company and that in the event of such breach the Company shall have, in addition to all other remedies at law, the right to an injunction, specific performance and other equitable relief to prevent violations of my obligations hereunder.

### Amann Voluntarily Resigns And Pfizer Subsequently Discovers Amann's Misappropriation of Pfizer's Confidential Information

Amann voluntarily resigned from her employment on January 3, 2016. On the morning of that date, she sent an email to Pfizer informing it of her resignation, which she indicated would be effective on January 13, 2016.

After Amann's employment ended, Pfizer discovered that, unbeknownst to it, in the days leading up to her resignation Amann had forwarded numerous emails and other documents from her Pfizer email account to her personal email account. Amann's forwarding of confidential and

proprietary information to her personal email account violated Pfizer's "Acceptable Use of Information Systems" policy ("Acceptable Use Policy"), was contrary to training Pfizer had provided to Amann on this very issue and violated her obligation in the Employment Agreement to safeguard and protect Pfizer's information. In particular, the Acceptable Use Policy states that "Pfizer proprietary information may not be transmitted via the Internet without protection from disclosure or modification by Pfizer-authorized security technology ...." Further, there is no lawful business purpose for Amann to maintain these emails on her unsecured personal email account outside the protections of Pfizer's secured firewalls, particularly given the fact she had already decided she was leaving the Company. And, while outside of the office, Amann was able to access her Pfizer email and certain shared drives remotely via a Pfizer-authorized security technology, negating any reason to expose Pfizer information to an unsecure environment.

Because of the sheer volume of information taken by Amann, Pfizer has not yet completed a full review of the emails and documents that Amann forwarded to her personal email account. However, based on a diligent review to date, Pfizer has discovered that Amann forwarded at least 42 emails, the majority of which contain attachments as well, to her personal email account in the days leading up to her resignation, some of which contain Pfizer's most sensitive information concerning its product launches and strategic planning. Upon information and belief, Amann had not previously forwarded email to a personal email account prior to the time period leading to her resignation from employment.

In addition to discovering that Amann had emailed Pfizer's confidential information to her personal email account, Pfizer also discovered that on January 2, 2017 at 6:00 P.M., less than 24 hours before she suddenly submitted her notice of resignation, Amann connected an unencrypted

removable USB electronic storage device to her Pfizer-issued laptop computer and copied 600 of

Pfizer's confidential, highly sensitive and proprietary files, (of which may contain up to 6,000

files). Amann has not returned that removable USB device to Pfizer, and, upon information and

belief, is still in possession of the removable USB device.

Illustrative examples of the information/documents misappropriated by Amann include the

following:

a. A launch sequencing document for a particular pharmaceutical product, which provides detailed information regarding Pfizer's planned launch of the product that Pfizer spends years and hundreds of millions of dollars strategically planning and commercializing;

b. A communication plan document, which describes research results for a marketed product and planned communications for validation of those results in various countries and markets;

c. Earnings reports for Pfizer, which include confidential information concerning Pfizer's investments in products and processes, the effectiveness of those investments, and prospective investments going forward;

d. Tactical planning documents, which reflect strategic short and long term plans on a global and regional level, including strategies for product rollouts, spending, business forecasts, and potential courses of action in light of developing events; and

e. Documents containing market research information, including identification of trends and paradigms, prospective areas of focus, and market research data purchased from third party providers for, at a minimum, hundreds of thousands of dollars.

The information and documents misappropriated by Amann provide a detailed roadmap to

Pfizer's strategic goals and how Pfizer specifically expects to implement those goals in both the

near term (i.e., the next 12 months) and the long term (i.e., the next 3-5 years). For example, the

misappropriated information includes information regarding steps being taken by Pfizer in order

to gain government approval of its products and formulas, the sequencing of different geographic

7

approvals being sought by Pfizer with respect to certain products and the different formulas of those products, the alternate approaches Pfizer is considering as it moves forward in its product launches depending upon developing circumstances, and Pfizer's communication plan for marketing its products. Amann has misappropriated this confidential information regarding multiple products, which are being launched in various countries and markets throughout the world. This highly sensitive information is not only critically important because of its content, but in many instances it is particularly time-sensitive as it relates to products that Pfizer is presently in the process of launching into the marketplace, seeking government approvals, and marketing to potential providers and consumers. If the information were to be disclosed to its competitors at this critical juncture, such disclosure could have an even greater harmful impact on Pfizer's ability to effectively market its products, because competitors could unfairly utilize this time-sensitive information by taking advantage of Pfizer's research and strategic planning investments in order to target products and markets that Pfizer has identified and is presently in the process of developing.

If Pfizer's competitors in the highly competitive pharmaceutical industry were able to review this information, such competitors would be placed at a distinct and unfair advantage to Pfizer in the pharmaceutical marketplace. Such advantage is not monetarily calculable, but by way of providing context, Pfizer spends hundreds of millions of dollars on its strategic planning and commercialization of products. The disclosure of the highly sensitive information misappropriated by Amann could effectively negate the potential benefits arising from Pfizer's multi-million dollar investment in its products as well as years of hundreds of employees' dedicated work. The misappropriated confidential information is highly valuable and, if disclosed

8

to one of Pfizer's competitors, could be used to reduce Pfizer's market share and coopt numerous potential business opportunities from Pfizer, which would result in millions of dollars of lost revenue for Pfizer. Further, in part because Pfizer is a public company, if the disclosure became public, then it could cause significant but indeterminate harm to Pfizer's reputation and stock value. Pfizer would need to make significant expenditures to begin to remediate the harm caused by such a disclosure by Amann, including but not limited to dedicating resources to investor relations in connection with such a disclosure, and actively communicating with government agencies concerning any pending approvals of products that may be impacted by such a disclosure.

Amann was provided with access to this confidential information for the purpose of leading the launch and marketing of Pfizer's products globally. In other words, Amann was not just an employee *in* marketing – she played an integral role in developing and setting the global marketing strategy for an important Pfizer product and, as a result, had access to Pfizer's highly sensitive information, access to which is limited by Pfizer to select leaders.

Pfizer puts in place policies to protect its information and also provides regular training to employees, including Amann, regarding the importance of maintaining confidentiality. Amann's conduct in forwarding Pfizer's confidential information to an unsecure personal email account violated Pfizer's policies. Similarly, Amann's copying of Pfizer's files to an external hard drive also violated Pfizer's policies. So long as Amann remains in possession of Pfizer's confidential files, in violation of her Agreement with Pfizer, Pfizer remains in imminent danger of suffering irreparable harm to its operations and reputation. As of the date of this filing, Amann has not returned any of the misappropriated confidential information, or the devices upon which they reside.

9

# ARGUMENT

## A.     Standard for a Temporary Restraining Order

Rule 65 of the Federal Rules of Civil Procedure provides that a temporary restraining order may be granted without notice to the adverse party if it appears from specific facts that "immediate and irreparable injury, loss, or damage" will result to the party seeking the order before the adverse party can be heard in opposition.  Fed. R. Civ. P. 65.

Pfizer is entitled to the relief it seeks because it has satisfied the prerequisites for such relief.  In considering a motion for injunctive relief or for a temporary restraining order, the court must consider:  (1) the likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is denied; (3) whether granting relief will not result in even greater harm to the non-moving party; and (4) whether the public interest favors such relief.  See Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir.2010).  The moving party need not "prevail on all four factors, only on the overall need for an injunction."  Neo Gen Screening, Inc. v. TeleChem In'l, Inc., 69 Fed. App'x 550, 554 (3d Cir. 2003) (citing Acierno v. New Castle Cnty, 40 F.3d 645, 653 (3d Cir. 1994)) (noting that the burden is on the moving party on the first two issues, but the district court should itself consider the second two).  "A sufficiently strong showing on either the likelihood of success or irreparable harm may justify an injunction, though a petitioner's showing on the other factors may be lacking."  Id.  Pfizer easily satisfies these standards.

**B.     Pfizer Is Likely To Succeed On The Merits Of Its Claims**

Pfizer's Verified Complaint seeks injunctive relief for Amann's breach of the Agreement and other statutory and common law violations.[1]  The evidence submitted here, including the Verified Complaint, establish Pfizer should be granted the limited injunctive relief it seeks.  Pfizer is able to demonstrate that it is likely to succeed on the merits of its legal claims, including in particular its breach of contract claim pursuant to the Agreement executed by Amann.  Indeed, in assessing whether there is a likelihood of success on the merits, courts "'generally do[ ] not go into the merits any farther than is necessary to determine whether the moving party established a likelihood of success.'"  Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010).  Pfizer can show a *prima facie* right to relief for its claims.

The Agreement expressly provides that it is governed by New York law.  New York courts enforce restrictive covenants such as those in Amann's agreement if they satisfy an overriding test of reasonableness.  BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 389 (1999).  A restrictive covenant will be found reasonable if it: "(1) is *no greater* [in time and area] than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public."  Id. at 388-89 (emphasis in original).  The covenants in Amann's Agreement satisfy each of these requirements.  "[T]he legitimate purpose of an employer in connection with employee restraints is 'to prevent competitive use, for a time, of *information* or *relationships* which pertain peculiarly to the employer and which the *employee acquired* in the course of the employment."  BDO Seidman, 93 N.Y.2d at 391 (emphasis in original).

---

[1] Amann's conduct in breach of the Agreement also constitutes a blatant misappropriation of Pfizer's confidential information and trade secrets in violation of the Defend Trade Secrets Act, Pennsylvania Uniform Trade Secrets Act (PUTSA), and common law.

An employer's legitimate interest includes preventing misappropriation of trade secrets or confidential information. 1 Model Mgt., LLC v. Kavoussi, 82 A.D.3d 502, 503, 918 N.Y.S.2d 431, 431 (1st Dep't 2011) (citing Reed, Roberts Assoc. v. Strauman, 40 N.Y.2d 303, 308 (1976); BDO Seidman, 93 N.Y.2d at 389). Here, the Agreement is necessary to protect Pfizer's confidential information and trade secrets, which Pfizer acquired, carefully cultivated and took great lengths to safeguard, at great expense. In particular, the Agreement prohibits Amann from using or disclosing Pfizer's secret or confidential information to third parties. In addition, the Agreement required Amann to return all of Pfizer's materials within 48 hours of her termination from employment. Amann is undoubtedly in breach of the Agreement due to her failure to return to Pfizer the confidential information that she surreptitiously misappropriated prior to her resignation. Further, given the surreptitious nature of such misappropriation, there is good cause to believe that Amann has also already violated, and/or plans to continue to violate, her obligation not to disclose such information.

As described more fully above, Amann had access to and misappropriated Pfizer's confidential information and trade secrets, including, without limitation: (a) information concerning Pfizer's strategic planning; (b) information concerning Pfizer's market research; (c) information concerning Pfizer's product launches and planned approval sequencing; and (d) non-public information concerning Pfizer's financials. See Lumex, Inc. v. Highsmith, 919 F. Supp. 624, 630 (E.D.N.Y. 1996) (holding that marketing information, customer feedback, pricing structure, sales training, and projected release dates were confidential and constituted trade secrets). Amann voluntarily resigned from her employment with Pfizer, and in the days and weeks preceding her resignation surreptitiously forwarded confidential information to her personal email

account and copied onto a removable storage device hundreds, and possibly thousands, of confidential Pfizer files.

Pfizer goes to great lengths to protect its confidential information and trade secrets, such as promulgating and disseminating policies to its employees that prohibit the use or disclosure of its confidential information and trade secrets for non-business purposes, requiring employees who have access to such confidential information and trade secrets to sign Employment Agreements, such as the Agreement signed by Amman, which prohibit the unauthorized disclosure of Pfizer's confidential information and require the return of all of Pfizer's information within 48 hours after an employee's employment ends, and requiring employees to undergo training regarding the use of confidential information. In contrast to the evidently legitimate interest of Pfizer, as illustrated by its ongoing efforts to protect its confidential information and the highly sensitive nature of such information, there is no discernible harm that would result to Amann by enforcement of the Agreement. Nor is there any indication of harm that would come to the public by enforcing the Agreement.

Finally, courts enforce ongoing non-disclosure covenants like the ones at issue here, which do not and need not contain temporal or geographic limitations. See Kaufman v. IBM, 61 N.Y.2d 930 (1984) (upholding enforcement of non-disclosure agreement in which provided that employee would not disclose any trade secrets and/or confidential information belonging to the company without the company's written permission). Under these circumstances, an injunction may properly issue where information subject to a confidentiality agreement may be used or disclosed in contravention of the agreement. See PharMethod, Inc. v. Caserta, 382 F. App'x 214, 219-21 (3d Cir. 2010) (citing Insulation Corp. of Am. v. Brobston, 446 Pa. Super. 520, 667 A.2d 729, 735 (Pa.

13

Super. Ct. 1995)); Neo Gen Screening, Inc. v. Telechem Int'l, Inc., 69 F. App'x 550, 555 (3d Cir. 2003) (affirming grant of preliminary injunction where confidentiality agreement governed party's access to and use of a clean room for technology development); see also Home Line Furniture Indus., Inc. v. Banner Retail Marketing, LLC, 630 F. Supp.2d 527, 543-44 (E.D. Pa. 2009) (granting preliminary injunction where party violated terms of confidentiality agreement). In light of Amann's surreptitious misappropriation of Pfizer's confidential information in the days and weeks leading to her voluntary resignation in conjunction with Amann's failure to return that same information to Pfizer, Pfizer has a reasonable likelihood of success on its claims that Amman breached the confidentiality and return of property obligations under the Agreement.

## C. If The Requested Relief Is Not Granted, Pfizer Will Suffer Irreparable Injury

If the requested relief is not granted, Pfizer will suffer immediate and irreparable harm. As set forth above and in the Verified Complaint, Amann's potential disclosure of confidential information has the potential to cause severe irreparable harm to Pfizer. The potential disclosure of Pfizer's most sensitive and highly confidential information, including information regarding products that are presently being launched into the marketplace, places Pfizer in imminent danger of suffering irreparable harm to its operations and reputation.

Irreparable harm is harm "of a peculiar nature" for which "compensation in money alone cannot atone." Opticians Ass'n of Am. v. Ind. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990) (quoting Morton v. Beyer, 822 F.2d 364, 372 (3d Cir. 1987)). In cases involving restrictive covenants, the "nature of the right that is injured" is the former employer's legitimate interest in protecting its business; as such, equitable relief is particularly appropriate. National Bus. Servs. v. Wright, 2 F. Supp.2d 701, 709 (E.D. Pa. 1998). The use, or even threatened use, of confidential

14

information and trade secrets by a former employee constitutes irreparable harm warranting injunctive relief. See SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. Pa. 1985) (finding irreparable harm where plaintiff showed that former employee intended to use plaintiff's trade secrets, and did not intend to take reasonable measures to preserve their secret status); Ecolaire, Inc. v. Crissman, 542 F. Supp. 196, 205 (E.D. Pa. 1982) ("the use by an employee of his former employer's confidential information or trade secrets has been found to be irreparable harm warranting injunctive relief"). "Once confidential information has been disseminated, it cannot be retracted. One cannot unring the bell." Tuff Wrap Installations Inc. v. Cleanwrap, Inc., 11-2576, 2011 U.S. Dist. LEXIS 70543, at *25-26 (E.D. Pa. June 29, 2011).[2]

The loss of market share or business opportunities is a type of harm which is difficult to quantify, rendering inadequate the legal remedies available if an injunction is not granted. See, e.g., Sheridan Broad. Networks, Inc. v. NBN Broad., Inc., 693 A.2d 989, 995 (Pa. Super. Ct. 1997) ("In the commercial context, the impending loss of business opportunities or market advantages may aptly be characterized as 'irreparable injury' for [the] purpose [of granting a preliminary injunction]."). The mere act of competing in the same business can create irreparable harm through the disruption of established business relationships, the possibility of losing new business, which is "inherently unascertainable," and the damage caused to market advantage. See Nordetek Envtl., Inc. v. RDP Techs., Inc., 677 F. Supp. 2d 825, 843-844 (E.D. Pa. 2010) (citing West Penn Specialty MSO, Inc. v. Nolan, 1999 PA Super 218, 737 A.2d 295, 299 (Pa. Super. 1999)).

---

[2] Significantly, the definition of "trade secret" in the PUTSA extends protection to a plaintiff who has not yet had an opportunity or has not yet acquired the means to put a trade secret to use. See Uniform Trade Secrets Act, § 1, comment.

Here, Amann has breached her obligations with respect to Pfizer's confidential information. Her conduct, including her surreptitiously emailing Pfizer's confidential information to her personal email and her copying of confidential files to a removable external storage device in the days and weeks preceding her voluntary resignation, supports the conclusion that Pfizer's confidential information is at grave risk of disclosure if Amann is not enjoined from using or disclosing that information. Moreover, the confidential information at issue would provide a roadmap to Pfizer's short and long term plans if it were disclosed, including its plans for ongoing product launches, strategic plans, business forecasting, and future investments. Such highly sensitive information in the hands of a competitor would provide such competitor with an unfair advantage and would directly result in a significant loss of market share and business opportunities for Pfizer. In sum, there would be enormous irreparable harm to Pfizer in the absence of the limited temporary restraining order being issued.

**D.      The Balance Of Hardships Weighs Decisively In Pfizer's Favor**

The primary purpose of a preliminary injunction is to preserve the *status quo* until a decision can be made on the merits. <u>Acierno v. New Castle County</u>, 40 F.3d 645 (3d Cir. 1994). Here, Pfizer stands to suffer immense hardships in the absence of injunctive relief. To the contrary, the proposed temporary restraining order will not cause any harm to Amann.

If the relief requested by Pfizer is allowed, Amann is merely being ordered to maintain the confidentiality of information she already contractually agreed not to disclose, and to return property and information that does not belong to her and which she also contractually agreed to return. In addition, she is being ordered to allow a third party to forensically preserve information for the expected arbitration proceeding, which she is obligated to do in any event now that litigation

16

has commenced. See e.g. Fed. R. Civ. P. 37(e). Of note, Amann already agreed to this relief in the Agreement, when she agreed that Pfizer would have the right to seek an injunction, specific performance and other equitable relief to prevent violations of her obligations under the Agreement. In other words, the relief requested would merely maintain the *status quo*.

Amann will not suffer any harm simply because she is required to live up to her contractual obligations. On the facts here, the potentially immeasurable injury to Pfizer clearly outweighs the (lack of) harm that will befall Amann were she to be enjoined as requested. Indeed, Amann voluntarily resigned from her employment, which only further weighs in favor of entering the temporary restraining order. National Bus. Servs. v. Wright, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998) ("[The employee] voluntarily left [the former employer], with full knowledge that [the former employer] would enforce the covenants against her; this factor is worth considering in balancing the harm to the parties.").

## E.     The Public Interest Supports the Enforcement of Amann's Agreement.

There is a general public interest in "upholding the inviolability of trade secrets and enforceability of confidentiality agreements." Bimbo Bakeries USA, 613 F.3d at 119; see SI Handling Sys., 753 F.2d at 1265 (finding unnecessary an "extended analysis of the public interest [because] extensive precedent supports an injunctive remedy where the elements of a trade secret claim are established"); MarbleLife, Inc. v. Stone Res., Inc., 759 F. Supp. 2d 552, 563 (E.D. Pa. 2010) ("As this is in essence a breach of contract dispute, the public interest favors enforcing valid contracts and making the parties live up the their agreements").

Amann's Agreement involves the rights of private parties. However, the public interest is implicated by the enforcement of the Agreement. Granting the temporary restraining order

17

requested would serve the public interests of upholding the sanctity of contracts and preserving businesses' willingness to share confidences with employees, without fear of unfair competition when the employment relationship ends.

## CONCLUSION

For the foregoing reasons, Pfizer's Motion for Temporary Restraining Order in the form attached as Exhibit 1 to the Pfizer's Motion should be granted.


Respectfully submitted,


By:  /s/ *John M. Nolan*
John M. Nolan
**JACKSON LEWIS P.C.**
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
(267) 319-7802

*ATTORNEYS FOR PLAINTIFF*

Dated: February 27, 2017

4841-2913-0051, v. 2

# EXHIBIT 1

PFIZER, INC,

        Plaintiff,

v.

AIMEE DE BLASIS AMANN,

        Defendant.

Civil Action No.

## [PROPOSED] TEMPORARY RESTRAINING ORDER

This matter comes before the Court upon consideration of Plaintiff's Emergency Motion for *Ex Parte* Temporary Restraining Order ("TRO Motion").

Based upon the Verified Complaint, the TRO Motion and Memorandum of Law filed in support of Plaintiff's motion, and all of the proceedings held in this matter, and good cause shown, the Court enters the following Order:

### Findings

1.    All conditions precedent to the entry of this relief have been satisfied. Valid grounds for a Temporary Restraining Order have been established.

2.    Plaintiff has a reasonable likelihood of success on the merits of its claims that Defendant breached the Employment Agreement (the "Agreement") by misappropriating confidential information and trade secrets from Plaintiff, and by failing to return such information to Plaintiff after Defendant's employment ended.

3.    Absent the relief provided herein, Plaintiff will suffer irreparable harm and injury to its operations and reputation, for which it has no adequate remedy at law. Upon consideration

of these factors, the harm Defendant may suffer if injunctive relief is granted, the public interest and all of the legally required considerations, the Court determines that this Order should be entered and this equitable relief should be granted.

4.     This Order is being issued without notice to Defendant because there is a real danger that, if given advance notice, Defendant will either disclose or destroy the confidential information and trade secrets at issue.

Orders

It is hereby ORDERED and ADJUDGED, that:

1.     Plaintiff's TRO Motion is GRANTED;

2.     Defendant is required to comply with the terms of the Agreement, including the provisions on non-disclosure of confidential information. As such, Defendant is enjoined from disclosing to any person or entity any confidential information about Plaintiff learned as a result of Defendant's employment with Plaintiff;

3.     Defendant is required to immediately return to Plaintiff all of Plaintiff's confidential information and trade secrets, and all documents or information derived from Plaintiff's confidential information and trade secrets, in paper form or contained on any external electronic storage devices, including but not limited on any personal computers, tablets, USB devices, or any other electronic storage device and/or media;

4.     Defendant is prohibited from accessing, transferring, downloading, using, copying, disclosing, altering, destroying, or deleting any confidential information, trade secrets, or property of Plaintiff, including information taken without authorization from Plaintiff's premises and computer systems;

5.     Defendant is prohibited from destroying any documents or evidence in physical form and from deleting from computer systems or any electronic devices or media in her possession, custody or control any information or documents that pertain, directly or indirectly, to the claims set forth in the Complaint filed by Plaintiff in this matter, until further order of the Court or agreement by the parties;

6.     Defendant is prohibited from deleting or altering any email from any email account used by Defendant, until further order of the Court or agreement by the parties;

7.     Defendant is prohibited from deleting or altering any documents stored in any internet-based or Cloud-based storage accounts utilized or maintained by Defendant, until further order of the Court or agreement by the parties;

8.     Defendant is required to immediately permit an independent computer forensic specialist designated by Plaintiff, a representative from Plaintiff, and Plaintiff's counsel, under the supervision and authority of the United States Marshal's Office, to obtain access to the computers and computer systems of Defendant, wherever located, and make a forensic image of any devices or applications containing electronically stored information ("ESI"), including but not limited to laptop computers, desktop computers, servers, removable media and storage devices, tablets, mobile telephones, backup storage devices and cloud-based applications, in Defendant's possession, custody and control, and deliver the same to the designated computer forensic specialist;

9.     Defendant is required to provide all cooperation and assistance to enable said forensic images to be made, including but not limited to providing any and all passwords and/or any other information necessary in order for such forensic images to be made;

10. The Parties are required to engage in discussions regarding the manner in which a forensic review will be conducted of the computers and electronic storage devices preserved and forensically copied pursuant to this Order. In the event that the Parties are unable to reach an agreement regarding the protocol for forensic review within seven days of the Order being issued, then the Parties should be ordered to submit to the Court their respective proposed versions of the forensic protocol and the Court shall determine the protocol to be followed;

11. The forensic copies made pursuant to this Order are to be held in escrow by Plaintiff's designated forensic expert, pending the parties' agreement, or the Court's Order, regarding the manner in which a forensic review will be conducted;

12. After the forensic copies made pursuant to this Order are completed, Defendant is required to delete all electronic information of Plaintiff in her custody or control, and to allow the computer forensic specialist designated by Plaintiff to certify such deletion by examining the relevant devices and accounts.

13. The United States Marshal's Service is authorized to use any and all reasonable force deemed to be necessary to enforce this Temporary Restraining Order issued by this Court, including but not limited to force reasonably necessary to enter Defendant's premises, and open any locked doors, cabinets and/or safes;

14. Plaintiff shall indemnify the U.S. Marshals Service and its employees from any matters that arise from this case.

Plaintiff is not required to post a bond or other security as a condition of the present Order.

This Order shall be binding upon Defendant and all persons and/or entities who act in concert or participation with her who receive actual notice of this Order.

ISSUED AT:_____
_____a.m./p.m. o'clock

Date:_____

_____
United States District Court Judge

PFIZER, INC,

Plaintiff,

v.

AIMEE DE BLASIS AMANN,

Defendant.

Civil Action No.

## [PROPOSED] TEMPORARY RESTRAINING ORDER

This matter comes before the Court upon consideration of Plaintiff's Emergency Motion for *Ex Parte* Temporary Restraining Order ("TRO Motion").

Based upon the Verified Complaint, the TRO Motion and Memorandum of Law filed in support of Plaintiff's motion, and all of the proceedings held in this matter, and good cause shown, the Court enters the following Order:

### Findings

1.     All conditions precedent to the entry of this relief have been satisfied.  Valid grounds for a Temporary Restraining Order have been established.

2.     Plaintiff has a reasonable likelihood of success on the merits of its claims that Defendant breached the Employment Agreement (the "Agreement") by misappropriating confidential information and trade secrets from Plaintiff, and by failing to return such information to Plaintiff after Defendant's employment ended.

3.     Absent the relief provided herein, Plaintiff will suffer irreparable harm and injury to its operations and reputation, for which it has no adequate remedy at law.  Upon consideration

of these factors, the harm Defendant may suffer if injunctive relief is granted, the public interest and all of the legally required considerations, the Court determines that this Order should be entered and this equitable relief should be granted.

4. This Order is being issued without notice to Defendant because there is a real danger that, if given advance notice, Defendant will either disclose or destroy the confidential information and trade secrets at issue.

## Orders

It is hereby ORDERED and ADJUDGED, that:

1. Plaintiff's TRO Motion is GRANTED;

2. Defendant is required to comply with the terms of the Agreement, including the provisions on non-disclosure of confidential information. As such, Defendant is enjoined from disclosing to any person or entity any confidential information about Plaintiff learned as a result of Defendant's employment with Plaintiff;

3. Defendant is required to immediately return to Plaintiff all of Plaintiff's confidential information and trade secrets, and all documents or information derived from Plaintiff's confidential information and trade secrets, in paper form or contained on any external electronic storage devices, including but not limited on any personal computers, tablets, USB devices, or any other electronic storage device and/or media;

4. Defendant is prohibited from accessing, transferring, downloading, using, copying, disclosing, altering, destroying, or deleting any confidential information, trade secrets, or property of Plaintiff, including information taken without authorization from Plaintiff's premises and computer systems;

5. Defendant is prohibited from destroying any documents or evidence in physical form and from deleting from computer systems or any electronic devices or media in her possession, custody or control any information or documents that pertain, directly or indirectly, to the claims set forth in the Complaint filed by Plaintiff in this matter, until further order of the Court or agreement by the parties;

6. Defendant is prohibited from deleting or altering any email from any email account used by Defendant, until further order of the Court or agreement by the parties;

7. Defendant is prohibited from deleting or altering any documents stored in any internet-based or Cloud-based storage accounts utilized or maintained by Defendant, until further order of the Court or agreement by the parties;

8. Defendant is required to immediately permit an independent computer forensic specialist designated by Plaintiff, a representative from Plaintiff, and Plaintiff's counsel, under the supervision and authority of the United States Marshal's Office, to obtain access to the computers and computer systems of Defendant, wherever located, and make a forensic image of any devices or applications containing electronically stored information ("ESI"), including but not limited to laptop computers, desktop computers, servers, removable media and storage devices, tablets, mobile telephones, backup storage devices and cloud-based applications, in Defendant's possession, custody and control, and deliver the same to the designated computer forensic specialist;

9. Defendant is required to provide all cooperation and assistance to enable said forensic images to be made, including but not limited to providing any and all passwords and/or any other information necessary in order for such forensic images to be made;

10. The Parties are required to engage in discussions regarding the manner in which a forensic review will be conducted of the computers and electronic storage devices preserved and forensically copied pursuant to this Order. In the event that the Parties are unable to reach an agreement regarding the protocol for forensic review within seven days of the Order being issued, then the Parties should be ordered to submit to the Court their respective proposed versions of the forensic protocol and the Court shall determine the protocol to be followed;

11. The forensic copies made pursuant to this Order are to be held in escrow by Plaintiff's designated forensic expert, pending the parties' agreement, or the Court's Order, regarding the manner in which a forensic review will be conducted;

12. After the forensic copies made pursuant to this Order are completed, Defendant is required to delete all electronic information of Plaintiff in her custody or control, and to allow the computer forensic specialist designated by Plaintiff to certify such deletion by examining the relevant devices and accounts.

13. The United States Marshal's Service is authorized to use any and all reasonable force deemed to be necessary to enforce this Temporary Restraining Order issued by this Court, including but not limited to force reasonably necessary to enter Defendant's premises, and open any locked doors, cabinets and/or safes;

14. Plaintiff shall indemnify the U.S. Marshals Service and its employees from any matters that arise from this case.

Plaintiff is not required to post a bond or other security as a condition of the present Order.

This Order shall be binding upon Defendant and all persons and/or entities who act in concert or participation with her who receive actual notice of this Order.


ISSUED AT:_____
_____a.m./p.m. o'clock

Date:_____          _____
                           United States District Court Judge